SUSAN JEFFERSON et al., Respondents, v. THE NEW YORK
ELEVATED RAILROAD COMPANY et al., Appellants.

Where in an action by an abutting owner against an elevated railroad com-
pany to restrain the operation of its road in a street, the question of
fee damages is gone into for the purpose of determining the sum to be
paid by defendant for a conveyance of plaintiff's rights in the street of
which he has been deprived, the opinions of witnesses as to what plain-
tiff's premises would have been worth if they were unaffected by the
road and its operation, is incompetent.
To questions calling for such testimony defendant objected, "as incom-
petent  *  *  *  and conjectural,  *  *  *  and not within the com-
petency of any witness." *Held*, that the objections were sufficient to
present the question.

(Argued March 24, 1892; decided April 26, 1892.)

APPEAL from judgment of the General Term of the Supreme
Court in the first judicial department, entered upon an order
made the first Monday of May, 1890, which affirmed a judg-
ment in favor of plaintiffs entered upon a decision of the court
on trial at Special Term.

This was an action to restrain the defendants from main-
taining and operating an elevated railway in front of premises
belonging to the plaintiffs known as No. 934 Ninth avenue;
to recover the damages already sustained by reason of the con-
struction and operation of said railway and, in case the defend-
ants are permitted to continue to operate the same, to compel
them to pay permanent damages sustained by the plaintiffs in
consequence thereof.

The judgment, as entered, awarded the sum of $2,000 for
damages already sustained, with a permanent injunction against
the further operation of the railroad, provided the defendants
should not within a specified time tender to the plaintiffs for
execution a conveyance of the "easements" found to have
been taken, and upon the execution and delivery of the same,
pay them the sum of $4,000, besides interest.

The facts, so far as material to the questions discussed, are
stated in the opinion.

*Samuel Blythe Rogers* for appellants. It was error to refuse to find that the premises in question had been benefited by the railroad and the station at Fifty-ninth street. (*Kennedy* v. *Porter*, 109 N. Y. 526, 534; *Bohm* v. *M. E. R. Co.*, 42 N. Y. S. R. 247; *In re Pacher*, 140 U. S. 360, 370; *McGean* v. *M. R. Co.*, 117 N. Y. 219; *Starbird* v. *Barrows*, 43 id. 200; *Flynn* v. *Taylor*, 127 id. 600.) It was error to admit the opinions of witnesses as to what the fee and rental values of the premises in question would have been without the elevated railroad. (*Roberts* v. *N. Y. E. R. R. Co.*, 128 N. Y. 455; *Doyle* v. *M. E. R. Co.*, Id. 488; *Gray* v. *M. R. Co.*, Id. 499; *Kernochan* v. *N. Y. E. R. Co.*, 41 N. Y. S. R. 266; *Messenger* v. *M. E. R. Co.*, Id. 949; *A. B. N. Co.* v. *N. Y. E. R. R. Co.*, 129 N. Y. 252.) It was error to award in this action, as incidental to the equitable relief, damages not sustained by plaintiffs themselves, but assigned to them by former owners of the property. (*Sohmer v. M. E. R. Co.*, 60 Hun, 148; *Lynch* v. *M. E. R. Co.*, 41 N. Y. S. R. 541; *Shepard* v. *M. R. Co.*, 131 N. Y. 215.)

*Charles Gibson Bennett* for respondents. The admission in evidence of the opinions of witnesses as to what the fee and rental value of the premises would be if there were no elevated railroad maintained and operated in front of them, was not error. (*Crawford* v. *M. R. Co.*, 120 N. Y. 624; *Valentine* v. *Richardt*, 126 id. 272; *Moore* v. *E. R. R. Co.*, Id. 671; *Houghton* v. *Jones*, 1 Wall. 702; 13 Barb. 169; 17 Wend. 649.) The refusal of the court to find as a fact that the maintenance and operation of the railway had been a benefit to the plaintiffs' premises was abundantly justified by the evidence, and so was not legal error. (*S. O. Co. Case*, 64 N. Y. 91; *Thompson* v. *Bank of B. N. A.*, 82 id. 1–7; *Williams* v. *B. E. R. Co.*, 126 id. 96; *Wiltsie* v. *Eddie*, 4 Trans. App. 481; *Glacius* v. *Black*, 50 N. Y. 145–147; *Dolan* v. *Merritt*, 18 Hun, 28; *Mulford* v. *Yager*, 7 N. Y. Supp. 88; *Van Slyke* v. *Hyatt*, 46 N. Y. 263; *Hill* v. *Grant*, Id. 496; *Hurlburt* v. *Hurlburt*, 128 id. 420.) The court did not err in awarding damages for

the period from April 13, 1883, to October 17, 1885, during which the premises were owned by the plaintiffs in common with two brothers, whose claim they have by assignment. (*Haggart* v. *Morgan*, 5 N. Y. 422–427; *Groat* v. *Gile*, 51 id. 431; *Mackellar* v. *Rogers*, 109 id. 468.)

VANN, J.    Upon the trial of this action one Cody was called as a witness for the plaintiffs and after testifying to his qualifications as an expert in estimating the value of real estate and stating his judgment as to the rental value of the premises in question just before certain alterations had been made therein, he was asked the following questions: " What in your judgment would have been the fair rental value of those premises if they had not been affected by the construction and operation of the elevated road? What in your judgment would be the fair selling fee value of those same premises if they were not affected by this road and its operation ? What would the fair rental value be if they were unaffected by this road and its operation?" To each of these questions the defendants objected " as incompetent, irrelevant, immaterial and conjectural; as not within the competency of this witness, and not within the competency of any witness; and as including all the damages due to the railroad and not all the damages due to the taking of the plaintiffs' easement." The objections were overruled and the defendants excepted. To the first question the witness answered : " It would be worth four or five dollars a month more." He then added that in his judgment the present fee value of the premises, situated as they are, with the road in operation, is about $40,000.

In answer to the second question, he said : " $45,000. In my judgment the fair rental value of those premises, as they are now, to-day, is, the store and basement, about $1,200 a year; the next floor, about $600 a year; the third floor, about $700 ; the fourth floor, $650 and the top floor, $600." His answer to the third question was as follows: " The store and basement would be worth $1,500 a year ; the next floor would be worth $700 a year ; the next floor, $800 a year and the fourth floor,

$720, $60 a month ; the top floor would be worth as much as $720."

Another expert witness for the plaintiffs was asked for his judgment as to the fee value of the premises if they were not affected by the railway and its operation, and subject to the same objection, he said from forty-seven to forty-eight thousand dollars. When asked as to the rental value, if the premises were unaffected by the railway and its operation, he answered, subject to the same objection, that it would bring at least seven or eight hundred dollars more.

In actions brought by abutting owners to restrain these defendants from operating or maintaining their elevated railroad, it has been held by this court that the opinion of an expert as to what would have been the value of the property affected, if the railroad had not been built, is incompetent. (*Roberts Case*, 128 N. Y. 455 ; *Doyle Case*, Id. 488 ; *Gray Case*, Id. 499, 508 ; *Kernochan Case*, 130 id. 651 ; *S. C.*, 41 N. Y. S. R. 266.)

In this case, professed experts were allowed to state what the plaintiffs' premises would be worth, if they were not affected by the road and its operation, which is equivalent to stating the value of the property if the road had not been built. The questions differ in form only, not in substance, from those recently adjudged incompetent. The questions and answers bring the same ideas before the mind in this case, except as to amounts, as in the cases cited.

We think that the opinions of witnesses as to what the premises in question would have been worth, if they were unaffected by the road and its operation, were incompetent under the rule established by this court in relation to the subject.

The learned counsel for the plaintiffs criticises the objections made by the defendants to this evidence as insufficient, because they do not suggest that the subject to which the questions relate is not one upon which expert evidence is admissible. Reference is made to the *McGean Case* (117 N. Y. 219), where the objection was based, in part, upon the ground that

the witness was not competent to give an opinion and the court suggested that this might imply that opinions were competent on the subject. In this case, however, no such implication can arise, because the point was distinctly made in the objection that the question was "not within the competency of this witness and not within the competency of any witness," just as in the *Doyle Case* (*supra*), it was objected that "the question was not within the competency of this expert, or any expert." In both cases the question called for an opinion only and the objection challenged the competency of any witness to give an opinion upon the subject to which the question related. In the *Roberts Case* (*supra*), the corresponding question was objected to as hypothetical and incompetent, and in the *Doyle Case* (*supra*), as hypothetical, speculative and incompetent.

In the *Gray Case* (*supra*, p. 508), a somewhat similar question was objected to "as not within the issue; as hypothetical and conjectural  *  *  *  and as incompetent, irrelevant and immaterial." In the case now before us, the questions were objected to on similar grounds, and to quite an extent on grounds identical with those in the authorities cited, and we think that the objections were sufficient to raise the point that was decided in those cases and to make them binding upon us in the decision of this. Conjecture and speculation are used in two of those cases as synonymous terms. (*Roberts Case,* p. 474; *Gray Case,* p. 509.)

It is further insisted that there was enough evidence, other than that objected to, to support the judgment, and hence that the defendants have not been harmed.

Even if the testimony that was not objected to was sufficient to justify the result reached by the learned trial judge, it certainly would not compel it. There was evidence that would have justified a result more favorable to the defendants. As was said by the court in *Foote* v. *Beecher* (78 N. Y. 155, 158), "an error in receiving incompetent evidence, if properly excepted to, can only be disregarded when it can be seen that it did no harm. If the evidence is slight or irrelevant, or if without it the fact is conclusively established by other evi-

dence, it may disregarded, because it could not have injured the other party."

Even if the result would probably have been the same without the objectionable evidence as with it, as there was testimony that would have warranted a different conclusion, we cannot say what weight the opinions, erroneously received, may have had. (*Starbird* v. *Barrons*, 43 N. Y. 200.)

The judgment should be reversed and a new trial granted, with costs to abide the event.

All concur.

Judgment reversed. _____